IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KATHERINE M. SPITTLE,                    Civ. No. 3:11-CV-00711-AA

      Plaintiff,                          OPINION AND ORDER

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
———————————————————————

Lisa R. J. Porter
KP Law LLC
16200 SW Pacific Highway
Suite H-280
Portland, OR 97224
    Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon   97204

Leisa A. Wolf
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington   98104
    Attorneys for Defendant


1    - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Katherine Spittle brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act (the Act). The Commissioner's decision is affirmed.

<u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed her DIB and SSI applications on July 30, 2004, alleging disability since December 31, 2001 due to seizure disorders, mental health problems, bad knees, bipolar disorder, and PTSD. Tr. 14, 61-62. The applications were denied initially and upon reconsideration. Tr. 57, 63. After timely requesting an administrative hearing, plaintiff, a medical expert, and a vocational expert appeared and testified before an Administrative Law Judge (ALJ) on February 7, 2008. Tr. 14. The hearing was held over in order to further develop the record, and on July 10, 2008, the ALJ conducted a second administrative hearing and heard testimony from plaintiff, a medical expert, and a vocational expert. <u>Id.</u> On August 21, 2008, the ALJ issued an unfavorable decision, finding plaintiff not disabled within the meaning of the Act. Tr. 11-27. The Appeals Council denied plaintiff's request for review on July 2, 2010, rendering the ALJ's decision the final decision of the Commissioner. Tr. 6. Plaintiff

now seeks judicial review.

Born in 1980, plaintiff was twenty-seven years old at the time of the ALJ's decision, with a high school education and some college courses, and no past relevant work. Tr. 26, 677, 679.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish his or her disability, while the Commissioner bears the burden of developing the record. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995); DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). This court must affirm the Commissioner's disability determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

\\\

\\\

3    - OPINION AND ORDER

DISCUSSION

I.    The ALJ's Findings

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period of alleged disability. Tr. 16; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that plaintiff has "severe" impairments of personality disorder with conversion disorder, pseudoseizures, and obesity, and "non-severe" impairments of asthma and bilateral knee problems. Tr. 16-22; 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that these impairments did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 22; Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d).

At steps four and five, an ALJ must assess the claimant's residual functional capacity (RFC) and determine the sustained work-related activities the claimant can still perform on a regular and continuing basis. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. Here, the ALJ found that plaintiff retained the RFC to perform work at light exertion levels. Tr. 25. Specifically, the ALJ found that plaintiff could lift and carry up to ten pounds continuously, ten pounds frequently, and twenty pounds occasionally, and that she has the capacity to sit for an eight hour work day with normal breaks, and stand and walk for up to six hours in an eight-hour work day. Id. The ALJ also found that plaintiff had unlimited push/pull capabilities of her upper and lower extremities, up to twenty pounds, and can occasionally bend, balance, stoop, kneel, crouch, and crawl. Id. Plaintiff must avoid climbing ropes, ladders, and scaffolding. Id.

The ALJ further found that plaintiff has fully functional manipulative, visual, hearing and communicative capacities, with no limits. Id. However, the ALJ did find plaintiff unable to drive due to her pseudoseizure history; unable to work around concentrations of vibration, flashing lights, fumes, dust, or gasses; and unable work around hazards such as unprotected heights, or machinery with exposed moving parts. Id. The ALJ also found that plaintiff had no past relevant work and was therefore unable to perform any past relevant work. Tr. 26; 20 C.F.R. §§ 404.1520(f), 416.920(f).

5    - OPINION AND ORDER

Thus, the ALJ proceeded to step five. At this step, the Commissioner bears the burden to establish that the claimant is capable of performing other work. Yuckert, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(g), 416.920(g). Relying on the testimony of the vocational expert, the ALJ found that plaintiff was able to perform other work, such as food assembly, garment sorter, and housekeeping and cleaning laborer. Tr. 26-27, 711-712. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## II.  Plaintiff's Allegations of Error

Plaintiff makes three broad allegations of error: 1) the ALJ failed to re-contact examining medical sources to obtain clarification of conflicts and/or ambiguities; 2) the ALJ erroneously equated symptoms of somatoform and borderline personality disorders with malingering, and in doing so, improperly assessed plaintiff's credibility; and 3) the ALJ failed to follow the mandatory requirements of SSR 96-8p when formulating the plaintiff's RFC, rendering the ALJ's step five finding unsupported by evidence and contrary to law. Pl.'s Reply Br. at 1, 4, 7.

### A.  The ALJ Satisfied Her Duty to Fully Develop the Record

Plaintiff contends the ALJ failed to fully and fairly develop the record by not re-contacting examining medial sources in order to clarify conflicts and/or ambiguities in the medical record.

An ALJ has a duty to fully and fairly develop the record. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, this

duty is only triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff asserts that if ambiguities exist, it is reversible error to fail to contact the claimant's treating provider, and that "it cannot be otherwise when the ALJ fails to contact SSA's own examining physicians to clarify ambiguities." Pl.'s Br. at 13.

Specifically, plaintiff assigns error to the ALJ's consideration of Dr. Greif's[1] report, asserting that it did not provide specific assessments needed to determine plaintiff's functionality. Pl.'s Br. at 12. Plaintiff also states that the ALJ improperly ignored "Dr. Greif's strong statement that further neuropsychological evaluation would be needed to make firmer conclusions as to how Plaintiff's disruptive life history could explain skill variability, etc." Id. As a result, plaintiff maintains that the ALJ was required to contact Dr. Greif for clarification regarding vocational limitations caused by her mental disorders.

Plaintiff reads Dr. Greif's statement out of context. Dr Greif indicated only that cognitive test results neither ruled out nor

---

[1] Elaine Greif, Ph.D. examined and performed psychological testing on plaintiff following the first day of testimony and at the request of her attorney, in order to further develop the medical record. Dr Greif's report appears at Tr. 625-28.

7    - OPINION AND ORDER

indicated neurologically based impairment, and that further neuropsychological testing would be required to determine this. Tr. 628. Dr. Greif further stated: "While current cognitive test results do not rule out the possibility of some neurologically based impairment, Ms. Spittle's disruptive life history could explain some results of concern such as skill variability, etc. Further neuropsychological evaluation would be needed to make firmer conclusions." Id. I find no error in the ALJ's alleged failure to clarify Dr. Greif's report.

The ALJ noted that Dr. Greif had neither assessed a GAF score nor any mental functional limitations. Tr. 21. However, the medical record contains multiple reports addressing plaintiff's mental health, and the ALJ discussed these reports. E.g., Tr. 20-21, 458-76, 536. Further, the impartial medical examiner, Dr. McDevitt, reviewed plaintiff's medical record and testified that he believed plaintiff could function in a work environment. Tr. 671, 676.

Considering the medical record as a whole, and the testimony of Dr. McDevitt, Dr. Greif's omission of mental functional limitations did not create ambiguities, nor did her report render the record inadequate to allow for proper evaluation of the evidence.

B.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next challenges the ALJ's credibility determination. In making her credibility determination, the ALJ considered

plaintiff's "testimony of impairments, symptomology and resulting functional limitations secondary to pain, fatigue and emotional distress," as compared to the medical evidence of record. Tr. 24. The ALJ found that plaintiff's claimed onset date for various impairments were unsupported by medical evidence of record. Id. The ALJ also found inconsistencies between plaintiff's "capacity to vaguely exaggerate her growing list of impairments" and "her otherwise superior memory and verbal comprehension scores or the good grades she earned in college." Tr. 23-24. Additionally, the ALJ found that none of the plaintiff's alleged physical limitations were supported by the medical evidence of record. Tr. 24. Specifically, the ALJ noted plaintiff's grades, inconsistent statements regarding her seizures, inconsistent statements regarding the discontinuance of seizure medication, lack of medical treatment considering the gravity of her complaints, and her ability to engage in activities of daily living in excess of her alleged disability. Tr. 21, 23-25. Considering these factors as a whole, the ALJ found the plaintiff to be "not entirely credible." Tr. 24.

Plaintiff contends that her testimony could only be discredited if the ALJ can show "specific, clear and convincing reasons for doing so," Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996), because the ALJ did not find evidence of malingering. Plaintiff argues that the ALJ failed to articulate such reasons.

Plaintiff makes three arguments in support of her argument: 1) the ALJ misread the record regarding whether plaintiff was taken off seizure medication; 2) the ALJ inappropriately considered plaintiff's lack of treatment in making her credibility determination; and 3) plaintiff's ability to occasionally shop, look for work, and manage money should not have been given such weight in the ALJ's findings. Pl.'s Reply Br. at 5-6.

### 1. Discontinuance of Seizure Medication

Apparently, plaintiff contends it was error for the ALJ to find that plaintiff had made inconsistent statement about discontinuing her seizure medication.

In support of her claim of error, plaintiff discusses lithium and its alleged ineffectiveness. Pl.'s Reply Br. at 5. Plaintiff points to a report from 2006, which recorded plaintiff's subjective complaint that lithium was ineffective at controlling her seizures. Tr. 598. Plaintiff further emphasizes a report from December 15, 2006, claiming that the physician noted discussing the possible "need to discontinue treatment if therapeutic and still having seizures." Pl.'s Reply Br. at 5.[2] Plaintiff finally states that, in 2004, she was taken off her medications following a hospital stay for neuropathic monitoring, and that she never fully resumed them

---

[2]The report, however, does not indicate discontinuance; rather, the physician reported that she "[d]iscussed may need to Δ treatment if therapeutic [and] still having seizures important to have FU." Tr. 599.

10   - OPINION AND ORDER

thereafter. Pl.'s Reply Br. at 5 (citing Tr. 565-67, 606-10).

It is unclear to this court what argument plaintiff is attempting to make here. The ALJ did discuss the plaintiff discontinuing medication and failing to advise Dr. Syna of this fact shortly thereafter. Tr. 19.[3] However, as found by the ALJ, the Third Party Seizure Questionnaire completed by a member of plaintiff's church on September 6, 2004 suggests that plaintiff indicated that she was taken off of all seizure-related medication. Tr. 19, 144-47. The ALJ noted that this is inconsistent with the medical record. Tr. 25. Although "sheer disbelief is no substitute for substantial evidence," Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004), the ALJ did not reach a determination based on sheer disbelief.

Regardless, this was but one factor out of several that the ALJ considered in making her credibility determination, which does not negate the substantial evidence in the record as a whole and therefore does not warrant reversal. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197-98 (9th Cir. 2004).

\\\

\\\

---

[3]The ALJ stated that "Dr. Syna notes discussing use of Zoloft with the claimant and it does not appear that the claimant divulged to Dr. Syna that she had stopped taking the Zoloft." Tr. 19. Her report does not appear to discuss the use of lithium in this context.

11   - OPINION AND ORDER

2.    Plaintiff's Lack of Medical Treatment

Plaintiff asserts that the ALJ inappropriately considered lack of treatment in making her credibility determination. The ALJ did note in passing that the plaintiff appears to have discontinued "mental health counseling or treatment" after October of 2004. Tr. 21. However, this does not appear to have been a substantial factor in the ALJ's credibility determination. See Tr. 24-25.

The plaintiff cites Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996), in support of her argument, "the court recognized that two-thirds of the 17 million Americans who suffer from depression do not seek treatment." Pl.'s Reply Br. at 5-6. However, the Ninth Circuit also stated that "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." Nguyen, 100 F.3d at 1645. The record does not reflect that plaintiff appeared in any way to be ignorant of her condition.

Additionally, plaintiff asserts that poverty constitutes a legitimate reason to forgo treatment. See Gamble v. Chater, 68 F.3d 319 (9th Cir. 1995). In Gamble, the court emphasized that disability benefits could not be denied because of a claimant's failure to obtain treatment that he cannot afford for lack of funds. Id. at 321. The record is unclear as to whether plaintiff could afford additional mental health treatment. However, the ALJ's

12    - OPINION AND ORDER

finding was not irrational given the other treatment plaintiff was able to obtain. <u>See</u> Tr. 484-85, 531-35, 562-65, 611-12. Accordingly, I do not find that there is sufficient evidence in the record to suggest that the plaintiff was unable to afford any mental health treatment so as to render the ALJ's findings erroneous.

### 3.   Plaintiff's Activities of Daily Living

Lastly, plaintiff argues that her ability to engage in various activities of daily living, such as shopping, looking for work, or managing money does not automatically disqualify her for disability benefits. Plaintiff contends that a "claimant need not vegetate in a darkroom" to be eligible for benefits, <u>Cooper v. Brown</u>, 815 F.2d 557, 561 (9th Cir. 1987), and that "[o]ccasional symptom-free periods--and even the sporadic ability to work--are not inconsistent with disability," <u>Lester v. Chater</u>, 81 F.3d 821, 833 (9th Cir. 1996). Although these cases support the claim that disability under the Act and the ability to engage in activities of daily living are not mutually exclusive, plaintiff offers no evidence here that the ALJ's findings were contrary to law. This court must uphold the Commissioner's decision even if "the evidence is susceptible to more than one rational interpretation." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). Here, the ALJ noted that by her own admission, plaintiff was able to shop, search for a job, manage money, prepare for an overseas church mission,

13   - OPINION AND ORDER

attend church, and maintain relationships with boyfriends, activities inconsistent with her allegations of disability. Tr. 21.

The ALJ's reasons for rejecting plaintiff's testimony must be "clear and convincing," identifying "what testimony is credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). Here, the ALJ clearly set forth her reasons for rejecting the plaintiff's testimony. Tr. 24-25. When considered as a whole, I find that the ALJ did not improperly assess the plaintiff's credibility.

C.    The ALJ's Step Five Findings

Plaintiff makes three claims in support of this contention: 1) the ALJ failed to follow SSR 96-8p when formulating the RFC; 2) the ALJ's findings regarding reduced concentration abilities are contrary to case law; and 3) the ALJ's finding that plaintiff had no impairments in concentration, persistence, or pace was arbitrary. Pl.'s Reply Br. at 7-8.

1.    The ALJ's Adherence to SSR 96-8p.

As to the first argument, plaintiff specifically asserts that the ALJ's RFC assessment was improper for not containing the number of days per month missed due to plaintiff's pseudoseizures, and by minimizing plaintiff's subjective reports of pseudoseizures and the effect of the somatoform and personality disorders on her ability to work. Pl.'s Br. at 15-16.

"The RFC assessment must include a discussion of why reported

symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p.[4] Some ten pages of the ALJ's report were devoted to a discussion of the medical and vocational evidence in the file, and includes a discussion of plaintiff's alleged symptom-related limitations and their consistency with other medical evidence. Tr. 16-26. Plaintiff suggests that an RFC must consider what an individual may do "on a regular and continuing basis for 8 hours a day, 5 days a week," and that the ALJ failed to recognize limitations in plaintiff's concentration, persistence, and pace that may prevent her from working eight hours per day, five days per week. Pl.'s Reply Br. at 7.

In this case, the ALJ addressed the extent of plaintiff's ability to work, within the context of an eight-hour work day. Tr. 25; see Widman v. Astrue, 302 F.App'x. 744, 747-48 (9th Cir. 2008) (the ALJ properly accounted for plaintiff's inability to work eight hours per day, five days per week by making a determination of how many hours per eight hour work day the plaintiff could be expected to stand and walk, and having identified his RFC as the most he could do). Further, the ALJ clearly addressed the Psychiatric Review Technique Form (PRTF), giving it "significant but not controlling weight" in her determination and finding the report to

---

[4]Available at
http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

be consistent with and supported by other medical evidence of record. Tr. 22. Further, plaintiff's alleged limitations are based on subjective complaints that the ALJ properly determined to be not credible, and the vocational expert testified that the individuals in the ALJ's hypothetical would be able to find employment. Tr. 711-12. Thus, I find no clear error in the ALJ's consideration of plaintiff's ability to work, or in her application of SSR 96-8p.

2.    The ALJ's Findings Regarding Concentration Abilities

Plaintiff next contends that the ALJ failed to address plaintiff's reduced concentration abilities and their effect on her ability to work. Pl.'s Reply Br. at 8. The PRTF prepared by Dr. Robert Henry on October 29, 2004 found that plaintiff had no functional limitation maintaining concentration, persistence, or pace. Tr. 474. Plaintiff offers no factual dispute regarding the PRTF, and cites only a list of cases that discuss the effect that deficiencies in concentration, persistence, or pace may have on the ability of a plaintiff to work. See Pl.'s Reply Br. at 8. The ALJ, however, considered plaintiff's "superior" memory and verbal recall test results, the fact that Dr. Greif found plaintiff's MMPI-2 results to be "exaggerated if not the result of frank misreporting," as well as her good grades in college. Tr. 21, 23-24. Because the ALJ satisfied her duty to fully and fairly develop the record, I therefore find no error in the ALJ's determination regarding plaintiff's reduced concentration abilities, or their

impact on her ability to work.

Finally, plaintiff argues that the ALJ did not address all of plaintiff's limitations or adequately develop the record, and came to an arbitrary conclusion that the plaintiff had no impairments of concentration, persistence, or pace. Pl.'s Reply Br. at 8. As noted above, the ALJ found that plaintiff has no deficits of concentration, persistence, or pace, which is supported by the PRTF prepared by Dr. Henry, in which he concluded that the plaintiff has no functional limitations due to difficulties in maintaining concentration, persistence, and pace. Tr. 464-476. Because the ALJ fully and fairly developed the record, I find no error in the ALJ's determinations regarding the plaintiff's impairments to concentration, persistence, or pace.

## CONCLUSION

The ALJ's finding that plaintiff is not disabled within the meaning of the Act was based on proper legal standards and supported by substantial evidence in the record. Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 25th day of September, 2012.


_____
Ann Aiken
United States District Judge